UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | No. 4:20 CR 34 RWS |
| v. ) | |
| ) | |
| FREDDIE DOYLE, JR., ) | |
| ) | |
| Defendant. ) | |

## **DETENTION ORDER**

On January 17, 2020, defendant FREDDIE DOYLE, JR., came before the Court with counsel for a detention hearing on the motion of the United States that he be detained until trial in the custody of the United States Marshals Service under the Bail Reform Act of 1986, 18 U.S.C. § 3142. (Doc. 4).

Defendant Doyle was originally charged by complaint on December 21, 2019, with possessing a firearm on June 27, 2019, while being an unlawful user of a controlled substance, in violation of 18 U.S.C. § 922(g)(3). (Doc. 1.) On that day, the government filed its motion for defendant's pretrial detention. (Doc. 4.) On January 15, 2020, the grand jury returned its indictment charging defendant with unlawfully possessing a firearm and ammunition on June 27, 2019, because he knew he was an unlawful user of and addicted to controlled substances, in violation of 18 U.S.C. § 922(g)(3). (Doc. 15.) .

The Bail Reform Act places upon the government a substantial burden of proof regarding whether a person should be detained.

> Only if the government shows by clear and convincing evidence that no release condition or set of conditions will *reasonably assure* the safety of the community and by a preponderance of the evidence that no condition or

set of conditions under [18 U.S.C. § 3142(c)] will *reasonably assure* the defendant's appearance can a defendant be detained before trial.

*United States v. Kisling*, 334 F.3d 734, 735 (8th Cir. 2003) (quoting *United States v. Orta*, 760 F.2d 887, 891 & n. 20 (8th Cir. 1985) (en banc)).  On the formal charges against him, the defendant retains the constitutional presumption of innocence. 18 U.S.C. § 3142(j).

In deciding the issue of detention or release, the rules of evidence are not strictly applied and the Court may consider unsworn proffers of information. *See* 18 U.S.C. § 3142(f); *United States v. Salerno*, 481 U.S. 739, 751 (1987) (the parties may "present information by proffer or otherwise"); *United States v. Agriprocessors, Inc.*, 2009 WL 290473 at *5 (N.D. Iowa 2009).  The factors to be considered by the Court include the nature and circumstances of each offense alleged, the weight of the evidence against the defendant, his history and personal background, whether at the time of the offense he was subject to release supervision, and whether the release of the defendant would pose a serious danger to any person or the community.  18 U.S.C. § 3142(g).

At the detention hearing, there was no dispute with any of the facts set forth in the written bail report of the Pretrial Services Officer, filed on January 16, 2020 (Doc. 10). Therefore, the Court hereby adopts and incorporates by reference into this Order the facts set forth in this bail report.  During the detention hearing, the government submitted a digital CD containing audio recordings of telephone conversations defendant participated in during his detention at the St. Louis City Justice Center, especially those made on July 28, 2019.  Also, counsel for the government and for the defendant proffered other information and made arguments.

Defendant Freddie Doyle, Jr., is 31 years of age.  He was born in St. Louis and has lived here all his life.  He reported to the Pretrial Services Office that he resides with his father in St. Louis.  Defendant's parents are divorced; his step-mother occasionally resides with his father.  State pretrial records relating to his June 27, 2019, arrest indicate

defendant stated he had been homeless for five months.  Defendant's father is currently hospitalized with Stage 4 cancer.  Defendant does not have contact with his two surviving brothers, one of whom lives in Ste. Genevieve and the other in Kentucky.  He has a 12-year-old son by a former relationship; he is required to pay child support for the child.  A childless two year marriage to another woman ended in 2016.  Defendant spent a short time in the military after high school, receiving a General Discharge.  Prior to his arrest in June 2019, he was employed for 7 months as a restaurant manager.  He reported he had also worked for a cable company for four years as a sales representative.

Defendant has a back injury from an auto accident in 2017, for which he has been prescribed Percocet.  He was diagnosed with ADD in 2014 and depression in 2016, following his divorce.  He has used marijuana and methamphetamine since age 15 and alcohol since age 16.  He reported he participated in the outpatient drug treatment in 2004.

Defendant's criminal record of convictions is relatively minor:  in 2006, misdemeanor DWI and failing to show proof of insurance; in 2007, ordinance violation for driving while intoxicated by alcohol; in 2009, DWI and failing to signal before turning; in 2010, littering from a vehicle; in 2015, illegally parking; in 2016, misdemeanor DWI with Suspended Imposition of Sentence; and in April 2019, littering.  His history of convictions greatly understates defendant's dangerousness to the community.

During and after 2015, defendant has been involved in very serious, violent criminal incidents.  On November 21, 2015, at a wedding reception, he became intoxicated, yelled, cussed, and created a disturbance.  He and his wife took a cab home.  At home he and his wife argued; his wife went to bed; he entered the bedroom and argued with her; she turned her back to him as he stood next to the bed; he then fired a gun with the bullet going into the floor.  She told police she was unsure whether he had

3

intended to frighten her or the gun went off accidently.  She did not press charges against him.

In July 2018, a Full Order of Protection was issued for a neighbor, because defendant blocked the neighbor's driveway with his truck, yelled that he would physically harm the neighbor and his fiancée, and threatened to burn the neighbor's house down.  The Order of Protection expired in 2019.  Defendant's counsel argued that this incident would not be repeated because defendant's father had been disputing with the neighbor, defendant was sticking up for his father, and the neighbor has since moved.

In April 2019, a Protection Order was issued against defendant for a man who then resided with defendant, because defendant struck and threatened the victim.  Later that month, a Full Order of Protection was issued and remains active.

On June 7, 2019, defendant approached a driver stopped at a red light, ordered the driver out of the car, placed him in handcuffs and forced him to lay face down on the ground.  When the police arrived, the officers were unable to remove the cuffs from the driver, so he was taken to a hospital where the cuffs were removed.  At that time police seized an automatic handgun from defendant.  Defense counsel argued that defendant had acted as he did, because he saw the person driving erratically.

The incident that led to defendant's arrest on June 27, 2019, involved defendant meeting a man in a bar in the City of St. Louis and asking him to walk with him to defendant's car.  At defendant's vehicle, defendant took out an automatic rifle and fired it at the man and two friends of the man.  Police in the vicinity heard the shot, responded quickly, and received the victims' report of the shooting.  Defendant was arrested from his vehicle and handcuffed.  Police found the rifle, fully loaded with 30 rounds, in a gutter where defendant had hid it after he saw the police arrive.  The shell casing was located and seized.  During his arrest, defendant told the police, if he had had more time, "I'd have killed those fags."  Methamphetamine was located by the police in defendant's car.  The incident of defendant going to his vehicle, removing the automatic rifle,

walking with it, pointing it at the victims, and shooting it once, was recorded by a video surveillance camera.  The video also shows defendant hiding the rifle behind his back when the officers arrived and then hiding it from the police by placing it on the ground by the curb.  Defendant admitted to being a regular user of methamphetamine.

Following defendant's arrest on June 27, 2019, while detained in the City Justice Center, on July 9, defendant was observed assaulting another inmate in the dayroom.  In a recorded Justice Center telephone conversation with his father on July 28, 2019, with his father's apparent agreement, defendant stated that if he had killed the people he shot at on June 27 outside the bar, he would not be sitting in jail, because "dead men tell no lies."  On August 11, he threw hot coffee on another inmate and, while officers were packing defendant's property, they found a long metal hook screw under his mattress.  On September 2, defendant repeatedly yelled racial and sexual expletives at a female correctional officer who was distributing food to the cells, stating also, 'I'm going to get you, bitch."  On October 26, defendant created a disturbance about the opening of his cell door and punched another inmate in the face.

The government has stated that it will likely return to the grand jury for a superseding indictment.

Defendant argues that his dangerousness can be controlled by conditions that prohibit his possession of firearms and the presence of firearms in his residence.  Given the entirety of the record, including his attempt to secrete the automatic rifle when he saw the police arrive on June 27, the undersigned believes defendant would not comply with these conditions.  Having defendant reside with his very ill father would not add any measure of assurance that defendant's dangerousness would be controlled or diminished.  This is because asking his father to undergo the substantial task of controlling his son, while he himself is gravely ill, would be a likely impossible burden for defendant's father to carry.

Defendant argues he has complied with conditions of state court supervision in the past.  The Court agrees the record indicates defendant completed the probation supervision imposed on him in December 2008.  However, as the Court reads the Pretrial Services report, less than two months after December 2008, on February 5, 2009, he violated his earlier probation when he was again arrested for driving while intoxicated, an offense to which he pled guilty two months later.  In July 2018, defendant is noted as completing probation for yet another DWI.

From this entire record, including the Pretrial Services bail report, the facts set forth in the complaint affidavit, the statements of counsel, the recorded telephone call statements made by defendant in the St. Louis City Justice Center, and the recommendation for detention by the Pretrial Services Office, the Court finds and concludes by clear and convincing evidence that the release of defendant FREDDIE DOYLE, JR., on his own recognizance, an unsecured appearance bond, or any other condition or combination of conditions of release will not reasonably protect the community from his continued, violent criminal activity, and will not reasonably assure he will not act violently in defense of the instant prosecution.  18 U.S.C. § 3142(b), (c).

Therefore,

**IT IS HEREBY ORDERED** that the motion of the United States for the pretrial detention of defendant FREDDIE DOYLE, JR., (Doc. 4) **is sustained.**  Defendant is committed to the custody of the United States Marshals Service until further order.

**IT IS FURTHER ORDERED** that defendant be confined in a facility, separate, to the extent practicable, from persons awaiting trial, serving sentences, or being held in custody pending appeal.

**IT IS FURTHER ORDERED** that defendant be allowed reasonable opportunity for consultation with counsel.

**IT IS FURTHER ORDERED** that on order of a Court of the United States or on request of an attorney for the United States, the person in charge of the facility in which

defendant is confined must deliver defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

                                                **/s/ David D. Noce**
                                    **UNITED STATES MAGISTRATE JUDGE**

Signed on January 27, 2020.